[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10707

Non-Argument Calendar

_____

SHERRY MICHELLE TURNER,

Plaintiff-Appellant,

*versus*

LUIS E. OCHOA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:22-cv-00049-CDL

_____

Before WILSON, LUCK, and MARCUS, Circuit Judges.

PER CURIAM:

Sherry Turner appeals the district court's grant of summary judgment to Deputy Luis Ochoa, after the court found that Ochoa was entitled to qualified immunity in Turner's § 1983 excessive-use-of-force case. After careful review, we affirm.

Viewed in the light most favorable to Turner, the summary judgment record establishes the following facts. In December 2021, Turner was driving in Oglethorpe County, Georgia. Although it was getting dark, Turner did not have her headlights on. She ran a stop sign and collided with a pickup truck, which was knocked off the road. None of the occupants of the pickup truck were seriously injured. Turner admitted that she had drunk beer and taken Xanax earlier that day, but claimed she was not intoxicated while driving. Witnesses said that Turner was very upset and indicated that she wanted to go home.

The Oglethorpe County Sheriff's deputies Shane Hunnicutt and Luis Ochoa responded to the scene, along with emergency medical technicians ("EMTs") and fire department personnel. Deputy Hunnicutt arrived on the scene first. He turned on his bodyworn camera. Deputy Hunnicutt checked on Turner and found her upset and crying. He radioed for a state trooper to come for code 10-55, meaning someone who was driving under the influence ("DUI"). Hunnicutt then radioed Ochoa and told him to "make sure you stay with that woman right there in the black car,

she is the driver, she's gonna be the 10-55." Ochoa did not turn on his bodyworn camera.[1]

When Deputy Ochoa approached Turner, she was very upset, and yelled and cursed at him. She told him she wasn't going to the hospital because she wasn't hurt and she wasn't going to jail because she hadn't done anything wrong. When EMTs approached her to examine her, she gestured at them with her arms as if to say "go away." At that point, Ochoa said "I smell alcohol" and grabbed Turner and handcuffed one of her wrists. Turner, who is 5 foot 4 and weighs 120 pounds, pushed away from him and moved her other arm out of his reach. In response, Deputy Ochoa tackled her to the ground, straddled her and handcuffed her other wrist. The impact of the takedown broke Turner's arm, and she had to undergo surgery to fix it. Turner testified that she expects to lose some degree of function in her arm for the rest of her life.

Turner was charged with DUI, obstruction of an officer, obstruction of EMTs, failure to stop, and failure to turn on headlights.

---

[1] Turner claims in passing that Deputy Ochoa intentionally did not turn his bodyworn camera on, so she was "entitled to the inference that the bodycam video was spoliated," which "should have sufficed on its own to [] require a denial of summary judgment to Ochoa." But Turner makes no substantive argument in her briefs to support this claim of spoliation and has abandoned the issue. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when [s]he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority," like when "the passing references to it are made in the 'statement of the case' or 'summary of the argument,' as occurred here.").

Turner sued Deputy Ochoa in the United States District Court for the Middle District of Georgia pursuant to 42 U.S.C. § 1983, alleging that Ochoa used excessive force to arrest her in violation of her Fourth Amendment rights.  Ochoa moved for summary judgment, arguing that he was entitled to qualified immunity because, even viewing the record in the light most favorable to Turner, "he used objectively reasonable force to arrest [Turner] and did not violate clearly established law."  The district court agreed.  It reasoned that "[t]he cases Turner relies on are factually distinguishable in that they involve plaintiffs whose actions would not appear to a reasonable officer to be resisting arrest."  But the district court added that "Turner does not dispute her witness's account that she told Ochoa she was not going with him to jail or anywhere else, and she admits that she pulled away from him and would not give him her remaining arm once he handcuffed the other."  The court said that "a reasonable officer could interpret her actions as an attempt to resist arrest."  The court analogized this case to *Horn v. Barron*, 720 F. App'x 557 (11th Cir. 2018) (per curiam), an unpublished Eleventh Circuit case in which we reversed the denial of qualified immunity to an officer who had broken a suspect's arm during an arrest, when the suspect was resisting. *See id*. at 563–65.  The court concluded that Ochoa was entitled to qualified immunity and granted his motion for summary judgment.

Turner timely appealed.

We review *de novo* the district court's order granting summary judgment on the basis of qualified immunity. *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). At the summary-judgment stage, we view all the evidence in the light most favorable to the non-moving party. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). We must grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. To determine whether a use of force is reasonable, the Supreme Court, in *Graham v. Connor*, 490 U.S. 386 (1989), has instructed that we must weigh the particular circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. In other words, "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d at 1198.

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at

1193–94 (quotations omitted). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* at 1194 (quotations omitted). If proven, the burden shifts to the plaintiff to establish that (1) the officer's conduct violated a constitutional right, and (2) that right was clearly established. *See id.* A court may address the two questions in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A plaintiff can show that a right is clearly established in one of three ways. First, the plaintiff can rely on a case with materially similar facts decided by the Supreme Court, the Court of Appeals, or the highest court of the state. *Sebastian v. Ortiz*, 918 F.3d 1301, 1310 (11th Cir. 2019). Second, the plaintiff can show that "a broader, clearly established principle should control the novel facts in this situation." *Id.* (quotations omitted). Third, the plaintiff can show "that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Lee*, 284 F.3d at 1199 (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)). Conduct is "obviously" unconstitutional "only if the standards set forth in *Graham* and our own case law 'inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful.'" *Id.* (quoting *Priester*, 208 F.3d at 926). The "obviousness" exception is a narrow one and requires the plaintiff to show that the officer's conduct "was so far beyond the hazy border between excessive and

acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point." *Priester*, 208 F.3d at 926 (quotations omitted).

The parties agree that Deputy Ochoa was acting within his discretionary authority when he arrested Turner, so the question is whether Turner can show that Ochoa acted with excessive force, in violation of the Fourth Amendment, and whether that violation was clearly established at the time of the incident. We agree with the district court that it was not clearly established that Ochoa's use of force was unconstitutional -- either through case law or because it was obvious -- so we need not decide in the first instance whether his use of force was excessive and therefore in violation of the Fourth Amendment. *See Pearson*, 555 U.S. at 236.

In order to establish that Deputy Ochoa violated Turner's clearly established rights when he arrested and handcuffed her, Turner relies on cases in which we held "that an arresting officer may not use gratuitous force on a non-resisting suspect who no longer poses a threat to his safety." *Acosta v. Miami-Dade County*, 97 F.4th 1233, 1242 (11th Cir. 2024); *see also Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014) ("We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, *not resisting*, and obeying commands." (emphasis added)).

In every case Turner relies on, we found qualified immunity inappropriate in a situation involving use of force on a *non-resisting*

suspect. *See Stephens v. DeGiovanni*, 852 F.3d 1298, 1327 n.32 (11th Cir. 2017) (plaintiff complied with all the officer's questions and "was not resisting or attempting to flee" when the officer assaulted him several times); *Saunders*, 766 F.3d at 1265–66 (plaintiff had complied with all commands and was "not resisting or attempting to flee" when officers slammed his face onto the pavement); *Galvez v. Bruce*, 552 F.3d 1238, 1243–45 (11th Cir. 2008) (plaintiff "offered no physical resistance at all" before the officer dragged him outside and slammed him into a concrete structure); *Davis v. Williams*, 451 F.3d 759, 767 (11th Cir. 2006) (plaintiff "did not actively resist arrest" when officer dragged him along the ground and thew him into a dog cage "all while a compliant [plaintiff] was already in handcuffs"); *Vinyard v. Wilson*, 311 F.3d 1340, 1343–44, 1348 (11th Cir. 2002) (there was "no indication that [plaintiff] actively resisted the initial arrest or attempted to flee at any time" when officer grabbed her arm, pulled her hair, and pepper sprayed her); *Lee*, 284 F.3d at 1198 (there was "no indication that [plaintiff] actively resisted or attempted to flee" before officer slammed plaintiff's head against the trunk of her car); *Priester*, 208 F.3d at 927 (plaintiff "was not attempting to flee or to resist arrest" when the officer ordered his dog to attack him); *Smith v. Mattox*, 127 F.3d 1416, 1419–20 (11th Cir. 1997) (plaintiff "was offering no resistance *at all*" when officer pulled his arm behind his back, breaking it).

None of these cases are on point here, however, because Turner *did* resist arrest. When Deputy Ochoa grabbed her arm and handcuffed one wrist, she -- by all accounts -- pushed away from him and tried to move her other hand out of his reach. *See, e.g.*,

App'x 390 (Plaintiff's statement of material facts (quoting Plaintiff's Interrogatory Responses)); *id.* at 472 (Amended Declaration of Donna Magnus); *id.* at 122 (Declaration of Luis Ochoa); *id.* at 135 (Declaration of Sarah Gibbs, EMT). Turner does not dispute that she "'refused . . . to give [Deputy Ochoa] her other arm' in reaction to Deputy Ochoa grabbing her" or that she "did not comply with Deputy Ochoa when he tried to handcuff her." Turner herself testified that she "instinctively withdrew" from Deputy Ochoa when he grabbed her. And Turner's primary witness, a bystander named Donna Magnus, declared among other things that Turner "tr[ied] to push away from [Ochoa] without giving him her other hand." So, when Ochoa took her to the ground and handcuffed her other wrist, it was to complete his arrest of a suspect who was resisting being arrested.

To be clear -- and it is undisputed on appeal -- Deputy Ochoa had the right to arrest Turner. An officer may arrest a person if he has probable cause to believe she has committed a misdemeanor, even if that misdemeanor is not punishable by prison time. *See Lee*, 284 F.3d at 1194–95 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). Ochoa had probable cause to believe that Turner had committed several misdemeanors, including driving with no headlights, failing to stop at a stop sign, and driving under the influence. *See* O.C.G.A. §§ 40-6-72(b), 40-6-391(a)(1), 40-8-22.[2] In turn, he had

---

[2] Though Turner argues that she was not driving under the influence, the facts that she admits to -- including that she drove straight through a stop sign as it was getting dark with no headlights on, that she was drinking and had taken a Xanax earlier that day, and that Deputy Ochoa smelled alcohol on her -- gave

the right to arrest her for those suspected misdemeanors, which meant he had the right to grab her and to handcuff her wrist. *See Lee*, 284 F.3d at 1194–95. And when Turner resisted that arrest, Ochoa had the right to use reasonable force to effectuate it. *Id.* at 1200.

Turner's argument that she "neither resisted nor made any attempt to flee the scene before Deputy Ochoa grabbed her without notice, handcuffed one arm, and violently charged her" misunderstands the relevant time period. The question is not whether Turner resisted *before* Ochoa attempted to arrest her. As we have discussed, Ochoa was well within his rights to arrest Turner for a variety of misdemeanors, regardless of whether she was resisting or not. *See id.* at 1194–95. The essential question, then, is whether Turner resisted *after* or *while* Ochoa attempted to arrest her. She undisputedly did so when she jerked away from Ochoa when he grabbed her arm. So, because every case Turner cites involves a suspect who is "offering no resistance *at all*," *Smith*, 127 F.3d at 1419–20 -- or stands for the broad principle that an officer "may not

---

Ochoa probable cause to believe that she was driving under the influence, regardless of whether that belief ultimately proved true or not. *See Manners v. Cannella*, 891 F.3d 959, 969 (11th Cir. 2018) ("Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." (quotations omitted)); *cf. State v. Hammang*, 549 S.E.2d 440, 441 (Ga. Ct. App. 2001) (concluding that an officer had sufficient reason to stop a driver for a suspected DUI where the driver drove through a poorly lit intersection when it was almost dark outside with no headlights on).

24-10707                Opinion of the Court                11

use gratuitous force on a non-resisting suspect," *Acosta*, 97 F.4th at 1242 -- those cases are inapplicable here.

Nor was Ochoa's conduct so obviously unconstitutional that every reasonable officer would recognize it as such.[3] *See Lee*, 284 F.3d at 1199. "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 1200 (quoting *Graham*, 490 U.S. at 396). "[T]he typical arrest involves some force and injury, and the use of force is an expected, necessary part of a law enforcement officer's task of subduing and securing individuals suspected of committing crimes." *Id.* (emphasis, citations, and quotations omitted). And officers are not "required to err on the side of caution" when faced with uncertain situations. *Id.* (quotations omitted). Indeed, our reasonableness calculus "must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a

---

[3] Turner disputes this use of the term "every reasonable officer," arguing that the correct standard is a "reasonable officer." Turner is confusing the standards used for two different parts of the qualified immunity analysis. The test for whether an officer's use of force is excessive in violation of the Fourth Amendment -- under the first prong of the qualified immunity analysis -- is "whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee*, 284 F.3d at 1197 (quotations omitted). The test for whether a violation is so obvious as to be clearly established without on-point case law -- under the second prong of the qualified immunity analysis -- is whether "every reasonable officer" would "conclude the force was unlawful." *Id.* at 1199 (quotations omitted).

particular situation." *Graham*, 490 U.S. at 396–97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (quotations omitted).

A law enforcement officer taking a suspect to the ground when that suspect is resisting arrest is generally an accepted use of force. *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (finding a police takedown *de minimis* force where the officer "could not have known whether [the suspect] was armed or whether he would resist arrest"). "We have never held that a tackle is a categorically unconstitutional kind of force. And for good reason: It is obvious that a police office will be authorized to tackle an arrestee under some circumstances." *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (footnote omitted). That is not to say that every type of tackle will be acceptable in every circumstance. Whether a tackle is excessive depends on the facts of each particular case. *See id.* But it is certainly not *obvious* that using a relatively routine maneuver to arrest a resisting suspect is excessive. At a minimum, the "border between excessive and acceptable force" is "hazy" under these circumstances, *Priester*, 208 F.3d at 926 (quotations omitted), and some reasonable officers, faced with a volatile suspect resisting arrest, might believe it necessary to tackle the suspect to complete the arrest. It was not clearly established -- either by caselaw or otherwise -- that Deputy Ochoa's use of force was unconstitutional.

Accordingly, the district court did not err when it granted summary judgment to Ochoa on the basis that he was entitled to qualified immunity, and we affirm.

**AFFIRMED.**